# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KYLE WRIGHT,                               Case No. 1:19-cv-885
       Plaintiff,                         McFarland, J.
                                     Litkovitz, M.J.
      vs.

GENERAL ENGINE
PRODUCTS, LLC, et al.,
       Defendants.                    **REPORT AND**
                                             **RECOMMENDATION**

Plaintiff Kyle Wright brings this action against defendants General Engine Products, LLC ("GEP") and Joshua Lansdale alleging discrimination in employment and other claims. This matter is before the Court on defendants' motion to partially dismiss plaintiff's claims (Doc.11), plaintiff's response in opposition (Doc. 12), and defendants' reply memorandum (Doc. 13).

## I. Factual Allegations

The complaint alleges the following facts. Plaintiff was employed with GEP as a Military Engine Technician from 2004 until September 29, 2017. Plaintiff was a member of the IUE-CWA Amalgamated Local Union No. 84755 and was subject to a collective bargaining agreement. At all relevant times, plaintiff has been a Type 1 brittle diabetic. Plaintiff's condition requires that he wear a subcutaneous insulin pump and maintain his blood sugar levels. Plaintiff took all necessary precautions to control his diabetes so as to not interfere with the performance of his work for GEP.

On January 14, 2016, plaintiff suffered a diabetic seizure while at work. Plaintiff was administered a glucagon injection and taken to the emergency room. The emergency room physician cleared plaintiff to return to work immediately following his discharge from the emergency room. Plaintiff returned to GEP that same day and presented his employer with a medical clearance and authorization to return to work. GEP refused to allow plaintiff to return to

work and sent him home with instructions not to enter GEP's premises. Plaintiff was placed on administrative leave and instructed to not return to work.

On January 15, 2016, plaintiff's primary care physician confirmed plaintiff was able to return to work with no restrictions. Plaintiff advised GEP, which continued to prohibit plaintiff from returning to work or otherwise entering GEP's premises. Plaintiff obtained a third return to work confirmation from his endocrinologist on January 19, 2016, but again GEP prohibited plaintiff's return to work.

Plaintiff was then evaluated by Dr. Richard Hoback, a physician chosen by GEP. Plaintiff alleges that GEP misrepresented the following to Dr. Hoback: plaintiff's job required him to "climb"; plaintiff's diabetic condition caused him to display "violent tendencies"; and plaintiff's hypoglycemic reactions occurred "frequently" during his employment. Dr. Hoback likewise concluded that there was no reason plaintiff could not return to work. Nevertheless, GEP refused to allow plaintiff to return to work for four months.

On May 18, 2016, GEP required plaintiff to sign an "Agreement Regarding Employee Health and Safety" as an express condition precedent to his return to work. The Agreement constituted terms of plaintiff's continued employment, the violation of which could result in his termination. The Agreement provided that "as a condition of continued employment" with GEP, plaintiff was required to: (a) wear an insulin sensor and pump during work periods; (b) ensure the insulin device is calibrated; (c) show his supervisors upon request that he is wearing the insulin device; (d) make information regarding his diabetic condition available upon request; (e) notify GEP if there is reason to believe the insulin device is an inadequate safeguard; (f) perform finger-stick tests before and during work; (g) notify a supervisor immediately upon detecting symptoms that would indicate a diabetic reaction; and (h) "keep close at hand: (i) a supply of

2

food and drink that he reasonably determines is adequate to address a hypoglycemic reaction; and (ii) a complete glucagon syringe kit, including full vials of saline and glucose." (Doc. 5 at 6). Plaintiff avers that had he not signed the Agreement, GEP would have terminated his employment. Plaintiff alleges that the Agreement created new terms of employment between plaintiff and GEP, terms that did not exist during his previous 12 years of employment with GEP. He further alleges the Agreement imposed additional obligations on him that other similarly-situated employees were not required to adhere to as a condition of their continued employment. Plaintiff alleges the Agreement "vitiated" his rights and GEP's obligations under the collective bargaining agreement between GEP and plaintiff's union.

Pursuant to the Agreement, plaintiff kept a supply of food and drink in his work locker. On or about August 7, 2017, plaintiff experienced symptoms of low blood sugar and went to his locker for his food and drink. He discovered that his locker and supplies had been ransacked and vandalized, precluding plaintiff from accessing the items he needed to manage his diabetic condition. That same day, plaintiff submitted a written statement to GEP's Human Resources Department, explaining that his diabetic supplies had been vandalized.

Two days after plaintiff reported the incident, GEP placed plaintiff on administrative leave, alleging that a co-worker, defendant Lansdale, had filed for a civil protection order against plaintiff. Plaintiff alleges, upon information and belief, that defendant Lansdale was the individual who ransacked and vandalized plaintiff's locker. Following a hearing on defendant Lansdale's petition, at which counsel for GEP was present, a court denied the petition for a civil protection order as without merit. However, GEP still prohibited plaintiff from returning to work and placed plaintiff on leave.

GEP terminated plaintiff's employment on September 29, 2017, for purportedly making certain statements and using curse words or profanity after plaintiff discovered his diabetic supplies had been ransacked and vandalized. Plaintiff alleges that during the relevant time of his employment, similarly-situated employees, including defendant Lansdale, made similar statements and engaged in similar conduct while in the workplace but were not placed on leave or terminated for using curse words or profanity.

The complaint further alleges that the decision to terminate plaintiff was in retaliation for reporting his diabetic supplies had been vandalized, and it was for the purpose of interfering with his right to participate in GEP's healthcare plan and improperly evade the health insurance costs associated with managing his disability.

Plaintiff alleges that by terminating his employment, GEP discriminated against him on the basis of his disability, retaliated against him for reporting vandalism, and interfered with his right to participate in GEP's healthcare plan to avoid paying the costs associated with his medical condition. Plaintiff alleges seven claims for relief: (I) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and Ohio Rev. Code § 4112; (II) retaliation; (III) wrongful discharge; (IV) a violation of § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; (V) a violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. 1161, *et seq*.; (VI) civil conspiracy; and (VII) intentional infliction of emotional distress ("IIED").

## II. Defendants' motion to dismiss

Defendants move to partially dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground the complaint fails to state a claim upon which relief can be granted. (Doc. 11). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Defendants request dismissal of plaintiff's ADA discrimination (Count I) and ADA retaliation (Count II) claims because plaintiff failed to exhaust his administrative remedies; the Ohio Rev. Code § 4112 discrimination claim (Count I) as it relates to the Agreement and plaintiff's administrative leave because such actions are not "adverse"; the Ohio Rev. Code § 4112 retaliation claim (Count II) for failure to state a claim for relief; the wrongful discharge claim (Count III) because plaintiff was not an at-will employee; the ERISA claim (Count IV) as speculative; the conspiracy claim (Count VI) for failure to state a claim for relief; and the intentional infliction of emotional distress claim (Count VII) for failure to state a claim for relief.

### III. Resolution

#### A. ADA discrimination (Count I) and ADA retaliation (Count II) claims

Plaintiff has not responded to defendants' motion to dismiss his ADA discrimination

(Count I) and ADA retaliation (Count II) claims on the basis he failed to exhaust his

administrative remedies. "A plaintiff seeking to bring employment discrimination claims under

the ADA must first exhaust administrative remedies, and failure to properly exhaust is an

appropriate basis for dismissal of an ADA action." *Jones v. Nat. Essentials, Inc.*, 740 F. App'x

489, 492 (6th Cir. 2018) (citing *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x

591, 593 (6th Cir. 2004) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). As

plaintiff has failed to contest the dismissal of these claims based on the failure to exhaust

administrative remedies, defendants' motion to dismiss these claims should be granted.

#### B. Ohio Rev. Code § 4112 discrimination claim (Count I) as it relates to the Agreement and plaintiff's administrative leave of absence

Ohio Rev. Code § 4112.02 prohibits discrimination on the basis of disability.[1]

Defendants seek dismissal of plaintiff's Ohio Rev. Code § 4112 discrimination claim (Count I)

as it relates to the Agreement and his leave of absence on the basis that neither amounts to an

adverse employment action. To establish a circumstantial case of disability discrimination under

the *McDonnell Douglas* burden shifting paradigm, plaintiff must show, inter alia, that he suffered

an adverse employment action. Plaintiff must show that defendant GEP took an adverse

employment action against him, at least in part, because he is disabled. *Witte v. Rippe &*

---

[1] Section 4112.02 of the Ohio Revised Code states in relevant part:

> It shall be an unlawful discriminatory practice: (A) For any employer, because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02(A).

*Kingston Sys., Inc.*, 358 F. Supp. 2d 658, 670 (S.D. Ohio 2005) (citing *Columbus Civil Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998)). *See also Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)).[2] An adverse action is one that constitutes a "materially adverse change in the terms of or conditions of . . . employment because of [the] employer's conduct." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (citations omitted). The challenged action must "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019) (quotation omitted). Defendants argue that requiring plaintiff to sign and adhere to the Agreement and placing plaintiff on a leave of absence do not rise to the level of an adverse action for purposes of a prima facie case of disability discrimination.

At the pleading stage, however, plaintiff need not allege all of the elements of a prima facie case of disability discrimination under the *McDonnell Douglas* framework to state a claim for relief. "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Thus, plaintiff is not required to allege facts to establish a prima facie case under the *McDonnell Douglas*

---

[2] "The essential elements of a claim brought under the ADA and the Ohio handicap [disability] discrimination statute are the same. Therefore, the case law regarding claims brought under the ADA applies equally to claims brought under the Ohio statute." *Hoffman v. Fidelity Brokerage Servs., Inc.,* 959 F. Supp. 452, 457 n. 1 (S.D. Ohio 1997) (citation omitted); *McGlone,* 697 N.E.2d at 206-07 ("The federal [ADA] is similar to the Ohio handicap discrimination law. . . . We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law."). *See also Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 680 (S.D. Ohio 2005) ("In interpreting section 4112 claims, courts may refer to the often-analogous law on employment discrimination claims under the Americans with Disabilities Act.") (citing *Swanson v. University of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001)).

framework at the pleading stage to state a claim for relief for employment discrimination.  *Id.*
*See also Keys v. Humana, Inc.*, 684 F. 3d 605 (6th Cir. 2012).  At this early stage in the
proceedings, the Court need only consider whether plaintiff's complaint sufficiently states a
plausible claim for relief for purposes of Rule 12(b)(6) and not whether plaintiff has made out a
prima facie case of discrimination based on indirect evidence.  "If a reasonable court can draw
the necessary inference from the factual material stated in the complaint, the plausibility standard
has been satisfied."  *Keys,* 684 F.3d at 610.  Nevertheless, a plaintiff "must allege 'sufficient
factual' content from which a court, informed by its 'judicial experience and common sense,'
could 'draw the reasonable inference'" that defendants discriminated against him because of his
disability.  *Id.* (quoting *Iqbal,* 556 U.S. at 678-79).

Plaintiff's complaint contains sufficient factual content that states a plausible claim for
relief for disability discrimination, regardless of whether he alleges that the Agreement and leave
of absence constitute "adverse actions" for purposes of a prima facie case.  The complaint alleges
that following a diabetic seizure in January 2016, plaintiff was placed on administrative leave[3]
despite the opinions of four physicians that he was fit for duty; he was required to sign an
Agreement that ostensibly altered his work terms as a condition precedent to his return to work;
and he was ultimately terminated following a verbal incident concerning the vandalism of his
diabetic food and supplies by defendant Lansdale, a co-worker, and his reporting of the incident

---

[3] Defendants contend that plaintiff's complaint fails to allege whether his administrative leave was with or without
pay, and therefore his leave cannot constitute an adverse action.  However, when addressing a similar issue on a
motion to dismiss, the Sixth Circuit determined that the failure of the plaintiff to allege whether a suspension was
with or without pay was not dispositive.  *Smith v. City of Salem, Ohio,* 378 F.3d 566, 576 n.1 (6th Cir. 2004).  "A
'materially adverse change' in employment conditions often involves a material loss of pay or benefits, but that is
not always the case, and 'other indices that might be unique to a particular situation' can constitute a 'materially
adverse change' as well. . . .  Because no discovery has been conducted yet, we do not know the full contours of the
suspension.  For now, . . . we find that Smith has sufficiently alleged an adverse employment action."  *Id.*  Under
*Smith,* it would be premature to dismiss or limit plaintiff's disability discrimination claim based on plaintiff's failure
to state whether his leave was with or without pay.

to human resources.  The complaint also alleges that he was treated differently than his non-disabled counterparts who were not required to sign an Agreement as a condition of continued employment or who engaged in similar verbal conduct and were not terminated or disciplined.  Plaintiff's complaint satisfies the Rule 8(a) requirement of a short and plain statement providing defendants with fair notice of the grounds for his disability discrimination claim.  Defendants' motion to dismiss plaintiff's disability discrimination claim on the basis of his alleged failure to allege the "adverse action" element of a prima facie case with respect to the Agreement and leave should be denied.[4]

### C.  Ohio Rev. Code § 4112 retaliation claim (Count II)

Defendants allege that plaintiff's Ohio Rev. Code § 4112 retaliation claim (Count II) should be dismissed because plaintiff has failed to allege that he engaged in any protected activity, an essential element of a retaliation claim.

Ohio law prohibits discrimination "in any manner against any other person because that person has opposed any unlawful discriminatory practice. . . ."  Ohio Rev. Code § 4112.02(I).

Plaintiff's complaint alleges:

Defendant GEP's aforementioned actions, including but not limited to, placing Plaintiff on administrative leave, and ultimately terminating him, after Plaintiff raised reasonable concerns of workplace safety and disability discrimination when he reported to Human Resources the incident in which Plaintiff's diabetic supplies had been vandalized by a co-worker, constitute retaliation.

(Doc. 5, ¶ 62).

---

[4] The cases cited by defendants are distinguishable as they were resolved on motions for summary judgment and not pre-discovery motions to dismiss.  As noted by the Supreme Court in *Swierkiewicz*, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case" and can vary depending on the context and before discovery has unearthed the relevant facts and evidence.  *Id.* at 511, 512.  Indeed, the *McDonnell Douglas* circumstantial evidence framework may not even come into play where discovery reveals direct evidence of discrimination.  *Id.*

Defendants contend that paragraph 62 is not supported by the facts alleged in paragraph 38 of the complaint – that plaintiff complained to management that his locker was vandalized – because it does not allege that plaintiff's locker was vandalized "because of" his alleged disability, and a complaint of vandalism is not the same as a complaint about discrimination.

Again, plaintiff's complaint need not allege a prima facie case of retaliation to withstand defendants' motion to dismiss.  Rather, his complaint must contain "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that defendants retaliated against him because he complained about the destruction of his diabetic supplies, supplies which he was required to maintain as a mandatory condition of his continued employment with GEP.  *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 493 (6th Cir. 2014) ("The district court held that Crowder's complaint 'f[ell] short of her burden to establish a prima facie case for her retaliation claims.'  This was error."); *Keys*, 684 F.3d at 609 ("The district court's requirement that Keys's complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent.").

Given the standard governing a motion to dismiss, the Court finds plaintiff's complaint states a plausible claim for retaliation.  *Twombly*, 550 U.S. at 570.  The Court may draw a reasonable inference that defendants retaliated against plaintiff when he complained to the Human Resources Department that his locker containing his diabetic supplies, which he was contractually bound to maintain as a condition of his employment, had been ransacked and vandalized, precluding him from utilizing those supplies to stabilize his blood sugar levels. (Doc. 5, ¶¶ 36-38).  The complaint alleges that two days later, plaintiff was placed on administrative leave by GEP, purportedly because a petition for a civil protection order was filed

against plaintiff by defendant Lansdale, who on information and belief, was the individual responsible for the vandalism of plaintiff's diabetic supplies. (*Id.*, ¶ 38). However, even when the petition for a protection order was dismissed as without merit and in plaintiff's favor,[5] GEP continued to prohibit plaintiff from returning to work and terminated his employment one month later. (*Id.*, ¶¶ 42-43, 46). Plaintiff's complaint contains sufficient factual content from which this Court could draw the reasonable inference that defendants retaliated against plaintiff for his complaint to the GEP's Human Resources Department. *Crowder*, 557 F. App'x at 493. Defendants' motion to dismiss plaintiff's Ohio Rev. Code § 4112 retaliation claim should be denied.

### D. Wrongful discharge claim (Count III)

Defendants allege that plaintiff's wrongful discharge claim should be dismissed because plaintiff was not an at-will employee, but instead he was a member of a union who was subject to a collective bargaining agreement. Defendants argue that under relevant Sixth Circuit and Ohio Supreme Court precedent, union members whose employment is governed by a collective bargaining agreement cannot bring wrongful discharge claims. (Doc. 11-1 at 6, citing *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625 (6th Cir. 2008); *Haynes v. Zoological Soc'y of Cincinnati*, 652 N.E.2d 948, 951 (Ohio 1995)).

The employment at-will doctrine provides that "a general or indefinite hiring is terminable at the will of either the employee or the employer" and "a discharge without cause does not give rise to an action for damages." *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002). In *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990), the Ohio Supreme Court established a public policy exception to the employment at-will

---

[5] The complaint alleges that counsel for GEP attended the hearing at which the petition was denied. (Doc. 5, ¶ 43). Therefore, the Court may reasonably infer that GEP had notice of the court's decision denying the petition.

doctrine. *Id*. at 986. The Court stated that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy," thereby recognizing a cause of action for such terminations. *Id*. at 987.

Nevertheless, a wrongful discharge claim based on public policy will not lie where the employee is a member of a union whose terms of employment are governed by a collective bargaining agreement which limits the employer's ability to terminate an employee. "The Supreme Court of Ohio has held that a union employee is not an employee-at-will, and therefore, cannot state a claim for wrongful termination in violation of Ohio public policy." *Williams v. United Steel Workers of Am.*, No. 1:09-cv-743, 2010 WL 909883, at *6 (S.D. Ohio Mar. 10, 2010) (citing *Haynes v. Zoological Soc. of Cincinnati*, 652 N.E.2d 948 (1995); *Staunch*, 511 F.3d at 632). In *Haynes*, the Ohio Supreme Court stated:

> *Greeley* provides an exception to the *employment-at-will* doctrine. Thus, . . . in order for an employee to bring a cause of action pursuant to *Greeley, supra,* that employee must have been an employee at will. The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150; *Boggs v. Avon Products, Inc.* (1990), 56 Ohio App. 3d 67, 564 N.E.2d 1128. Haynes clearly does not qualify as an employee at will. As a member of a union, the terms of her employment relationship were governed by a collective bargaining agreement. That agreement specifically limited the power of the zoo to terminate Haynes and, as a result, took her outside the context of employment at will. Because she was not an employee at will, she is outside the class of employees for whom *Greeley* provides protection.

*Haynes*, 652 N.E.2d at 951. The Sixth Circuit and this Court have consistently relied upon *Haynes* to dismiss public policy wrongful discharge claims brought by former union members. *See, e.g., Staunch*, 511 F.3d at 632 ("Staunch cannot maintain a claim for wrongful discharge in violation of Ohio's public policy because she was not employed at will, but was employed

pursuant to the terms of a collective bargaining agreement."); *Klepsky v. United Parcel Serv.*, 489 F.3d 264, 271 (6th Cir. 2007) ("[B]ecause Klepsky is not an at-will employee, we affirm the district court's dismissal of Klepsky's [public policy] claim pursuant to *Haynes*." ); *Lewis v. Navistar Int'l Truck 7*, No. 3:15-cv-11, 2016 WL 4376289, at *6 (S.D. Ohio Aug. 17, 2016) ("to bring a *Greeley* action, one must be an employee at will; a member of a union cannot do so" under *Haynes*); *Williams*, 2010 WL 909883, at *6 ("Williams cannot hold Steelcraft liable for wrongful discharge in violation of public policy because he is a member of a union whose employment was governed by a collective bargaining agreement."); *Pearson v. Ford Motor Co*., 747 F. Supp. 2d 966, 974 (S.D. Ohio 2010) ("as a union member Plaintiff was not an at-will employee, and therefore, under the law he cannot assert a claim for wrongful discharge in violation of public policy").

Plaintiff's complaint alleges that he was a member of the IUE-CWA Amalgamated Local Union No. 84755, and subject to a collective bargaining agreement during the relevant time of his employment. (Doc. 5, ¶ 7). As plaintiff was the member of a union whose employment was governed by a collective bargaining agreement, his employment was not at-will, and he cannot bring a claim for wrongful discharge in violation of public policy.[6] Accordingly, defendants' motion to dismiss plaintiff's wrongful discharge claim should be granted.

---

[6] *Green v. Land-O-Sun Dairies, LLC*, No. 3:06-cv-2509, 2007 WL 1544588, at *5 (N.D. Ohio May 24, 2007), cited by plaintiff, is inapposite. The court in *Green* recognized that the Ohio Supreme Court in *Coolidge v. Riverdale Local School Dist.*, 797 N.E.2d 61 (Ohio 2003) "created an exception to the *Haynes* bar in cases involving persons, including union members, receiving temporary total disability workers compensation payments." As noted by *Green*, the "*Coolidge* court did not give a blanket extension to all employees covered by a CBA, but found that the workers' compensation system redefined the employment relationship." *Id.* at *5 (citations omitted). Here, in contrast, plaintiff has not alleged he is receiving benefits under the workers' compensation system such that an exception to *Haynes* applies. Nor has plaintiff pointed to other legal authority recognizing an exception to *Haynes*.

### E.  ERISA claim (Count IV)

Plaintiff alleges that GEP terminated his employment for the purpose of interfering with his right to participate in its healthcare plan and to avoid paying his health insurance costs in violation of ERISA.  (Doc. 5, ¶¶ 49, 72).  Defendants seek dismissal of this claim based on plaintiff's failure to allege facts showing GEP had the specific intent to violate ERISA.

Section 510 of ERISA states: "It shall be unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an employee benefit plan.  29 U.S.C. § 1140. To state a claim under § 510, the plaintiff must allege that the defendant had a "specific intent to violate ERISA."  *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997) (citing *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir. 1992)).  "However, a court cannot infer specific intent to violate ERISA from the mere fact that a plaintiff's termination lessened his amount of future benefits.  Proof of specific intent is required to establish an ERISA § 510 violation because the loss of benefits is incidental to every termination."  *Williams*, 2010 WL 909883, at *7 (citing *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1113 (6th Cir. 2001)). On a motion to dismiss, the Court must ask whether the facts, taken as true, permit an inference that GEP discharged plaintiff for the purpose of interfering with his rights to medical benefits under GEP's ERISA plan.  *See Spangler v. E. Kentucky Power Coop., Inc*., 790 F. App'x 719, 722 (6th Cir. 2019) (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B*., 727 F.3d 502, 505-06 (6th Cir. 2013); *Bailey v. Enrichment Corp*., 530 F. App'x 471, 477-78 (6th Cir. 2013)).

Plaintiff alleges that GEP's intent to violate ERISA can be inferred from its "continued discrimination against [plaintiff] based on his disability"; GEP's different treatment of plaintiff vis-à-vis similarly-situated employees; and GEP's engaging "in such conduct intentionally and

14

maliciously." (Doc. 12 at 16). Plaintiff's allegations that GEP's conduct was intentional and malicious amount to legal conclusions, not factual allegations, and do not support his ERISA claim. In addition, the fact that plaintiff may have suffered disability discrimination and was treated differently than similarly-situated employees does not raise an inference that GEP discharged him for the purpose of violating his ERISA rights. Otherwise, any discharged employee with an employer-sponsored ERISA plan who stated a claim for relief for discrimination would also necessarily state a claim for relief under ERISA § 510. *Cf. Majewski*, 274 F.3d at 1113. These allegations do not lead to the plausible inference that plaintiff was fired for the purpose of preventing him from receiving medical benefits under GEP's ERISA plan.

Finally, plaintiff contends that GEP's conduct after he was terminated – allegedly denying plaintiff the right to participate in its healthcare plan in violation of COBRA[7] by delaying his receipt of COBRA insurance for 56 days – is indicative of GEP's intent to deprive plaintiff of his ERISA rights. Plaintiff has failed to identify a factual basis connecting the two actions that would give rise to an inference that defendant had a specific intent to violate ERISA. In the absence of additional factual allegations, plaintiff's complaint fails to state a claim for ERISA interference that is plausible as opposed to merely possible. Defendants' motion to dismiss plaintiff's ERISA claim should be granted.

### F. Conspiracy claim (Count VI)

Plaintiff alleges that defendants – GEP and Joshua Lansdale – conspired to bring about his termination by, among other things, "instituting baseless civil protection proceedings against

---

[7] COBRA provides, in relevant part:

> The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

29 U.S.C. § 1161(a).

Plaintiff."  (Doc. 12, citing Doc. 5, ¶ 79).  In Ohio, a state law civil conspiracy claim requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863 (1995).  "A civil-conspiracy claim requires the existence of a separate underlying unlawful act."  *Daudistel v. Vill. of Silverton*, No. C-130661, 2014 WL 7358313 (Ohio Ct. App. Dec. 26, 2014) (citing *Williams v. Aetna Fin. Co.,* 700 N.E.2d 859 (1998); *Gosden v. Louis*, 687 N.E.2d 481 (Ohio Ct. App. 1996)).

Defendants seek dismissal of this claim under the intra-corporate conspiracy doctrine because the alleged co-conspirators are members of the same collective entity and do not constitute separate people to form a conspiracy.  (Doc. 11-1 at 8).  The intra-corporate conspiracy doctrine provides:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1952)). *See also Bays v. Canty*, 330 F. App'x 594 (6th Cir. 2009) ("since a corporation only acts through its officers, a group of corporate officers acting within the scope of employment cannot create a conspiracy").

Plaintiff contends that the exception to this general rule – where the employee acts beyond the scope of his employment – applies in this case to defeat the intra-corporate conspiracy defense.  (Doc. 12 at 17, citing *Daudistel*, 2014 WL 7358313, at *9).

"Generally, when a plaintiff is alleging that an employee/agent conspired with his or her employer, the plaintiff must show that the employee was acting outside the course and scope of

16

his corporate position in order to maintain a valid civil conspiracy claim." *Bailey v. Priyanka Inc.*, No. 20437, 2001 WL 1192731 (Ohio Ct. App. Oct. 10, 2001) (citing *Tandem Staffing v. ABC Automation Packing, Inc.*, No. 19774, 2000 WL 727534 (Ohio Ct. App. June 7, 2000)). "For an act to fall within the scope of employment, it must be calculated to facilitate or promote the business for which the [employee] was employed." *Riotte v. Cleveland*, 960 N.E.2d 496, 501 (Ohio Ct. App. 2011) (internal quotation marks omitted) (citing *Osborne v. Lyles*, 587 N.E.2d 825, 829 (Ohio 1992) (quoting *Byrd v. Faber*, 565 N.E.2d 584, 587 (Ohio 1991) (quoting *Little Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869)). *See also Curry v. Blanchester*, Nos. CA2009-08-010, CA2009-08-012, 2010 WL 2807948, *6 (Ohio Ct. App. July 19, 2010) ("Ohio courts have generally drawn from agency-law principles to hold that 'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.'") (citing *Jackson v. McDonald*, 760 N.E.2d 24, 28 (Ohio Ct. App. 2001); *Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007)).

Viewing the complaint in the light most favorable to plaintiff, as the Court must on a motion to dismiss, plaintiff has alleged facts indicating that defendant Lansdale acted outside the scope of his employment with GEP when he filed a petition for a civil protection order against plaintiff. This is an act personal to him and not on behalf of his employer. Whether defendant Lansdale's actions were in fact calculated to facilitate or promote GEP's business is a factual issue that should be fleshed out during discovery. Defendants' motion to dismiss plaintiff's civil conspiracy claim on the basis of the intra-corporate conspiracy doctrine should be denied.[8]

---

[8] *Coleman v. United States*, 91 F.3d 820 (6th Cir. 1996), cited by defendants, is not persuasive as it relies on the construction of Kentucky state law in the context of the particular facts of that case.

17

### G.  Intentional infliction of emotional distress claim (Count VII)

Plaintiff brings a claim against defendants for intentional infliction of emotional distress ("IIED") based on his termination; the ransacking and vandalism of his locker, which prevented his immediate access to his diabetic supplies; GEP's delay in placing him on COBRA health insurance; and GEP's prohibition on his return to work or even entering the premises after the court denied defendant Lansdale's petition for a civil protection order.  (Doc. 12 at 19, citing ¶¶ 36, 44, 51).  Defendants allege that plaintiff's complaint fails to state a claim for relief for IIED because he has not alleged that defendants' conduct was extreme and outrageous or that plaintiff suffered serious emotional anguish.

In Ohio, a plaintiff claiming intentional infliction of emotional distress must show the following: (1) the defendant intended to cause plaintiff's emotional distress or should have known that such serious emotional distress would result, (2) the defendant's conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the defendant's conduct proximately caused the plaintiff's psychic injury, and (4) the plaintiff's emotional distress was so serious that no reasonable person could be expected to endure it.  *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).  "Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in which if the story is told would extract the exclamation of 'outrageous!' from a reasonable person."  *Hall v. United Labs, Inc*., 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (citing *Pyle v. Pyle*, 463 N.E.2d 98, 104 (Ohio Ct. App. 1983)).

The allegations of the complaint do not satisfy the element of extreme or outrageous conduct so as to state an intentional infliction of emotional distress claim.  As this Court has noted:

> [L]iability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671. "[A]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999).

*Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 709-10 (S.D. Ohio 2014). Plaintiff has not alleged facts indicating conduct that a reasonable person could conclude is "beyond all possible bounds of decency" or atrocious. *Id.* Therefore, the complaint fails to allege an essential element of an IIED claim.

Second, even if the Court could find that defendants' conduct was extreme and outrageous, the complaint fails to allege that plaintiff has suffered serious emotional distress. Serious emotional distress requires a showing of serious mental anguish:

> "[T]he mental anguish suffered must be very serious-'beyond trifling mental disturbance, mere upset or hurt feelings.' *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983). Rather, the emotional injury must be 'both severe and debilitating[]' such that a reasonable person 'would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* (citations omitted). "[S]ome examples of serious emotional distress . . . include traumatically induced neurosis, psychosis, chronic depression, or phobia.' *Id.* (citation omitted)."

*Dean v. Norfolk S. Ry. Co*., No. 4:13-cv-2622, 2015 WL 1423456, at *7 (N.D. Ohio Mar. 27, 2015), *aff'd*, No. 15-3446 (6th Cir. Apr. 6, 2016).

Plaintiff's only factual allegations regarding emotional distress are set forth in ¶ 51 of the complaint: "Defendant's delay tactics caused Plaintiff a significant amount of stress as he began to run dangerously low on his diabetic pump supplies while awaiting to exercise his COBRA rights." (Doc. 5, ¶ 51). Plaintiff alleges he waited 56 days before he was placed on GEP's medical insurance through COBRA. (*Id*., ¶ 50). The alleged emotional injury cannot be characterized as both severe and debilitating such that a reasonable person would be unable to

cope adequately with the mental distress engendered by the loss of medical insurance for 56 days. Plaintiff's allegations, without more, are insufficient to state a claim for serious emotional distress. *See Mathur v. Meriam Process Techs.*, No. 1:10-cv-00121, 2010 WL 3211875, at *3 (finding no allegation of serious emotional distress because "[a]lthough the loss of employment and medical insurance may be interpreted as severe, a reasonable person should be expected to endure that pain.") (Report and Recommendation), *adopted*, 2010 WL 3211872 (N.D. Ohio Aug. 11, 2010). The complaint fails to allege the requisite mental injury to state a claim for IIED. Therefore, defendants' motion to dismiss plaintiff's IIED claim should be granted.

## IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Defendants' motion to dismiss be **GRANTED** on plaintiff's ADA discrimination and ADA retaliation claims (Counts I and II), wrongful discharge claim (Count III), ERISA claim (Count IV), and intentional infliction of emotional distress claim (Count VII).

2. Defendants' motion to dismiss be **DENIED** on plaintiff's Ohio Rev. Code § 4112 discrimination claim as it relates to the Agreement and plaintiff's leave of absence (Count I), Ohio Rev. Code § 4112 retaliation claim (Count II), and conspiracy claim (Count VI).

Date: 5/18/2020

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KYLE WRIGHT,                                      Case No. 1:19-cv-885
      Plaintiff,                                  McFarland, J.
                                                     Litkovitz, M.J.

      vs.

GENERAL ENGINE
PRODUCTS, LLC, et al.,
      Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).